IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HAOYU WANG,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW DUMONT et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER TO CURE DEFICIENT COMPLAINT**<br><br>Case No. 2:26-CV-141-HCN<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiff Haoyu Wang, a Salt Lake County pretrial detainee, brought this *pro se* civil-rights action under 42 U.S.C. § 1983. Having now screened the Complaint under its statutory review function, *see* 28 U.S.C. § 1915A,[1] the court orders the Plaintiff to file an amended complaint that cures the deficiencies identified in this order if he would like to further pursue his claims.

### A.      COMPLAINT'S DEFICIENCIES

The Complaint:

---

[1] The screening statute reads:

> (a) Screening.--The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> >
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

**1.** may improperly allege civil-rights violations on a *respondeat superior* theory. (See below.)

**2.** generally does not affirmatively link one or more specific named defendant(s) to each element of each alleged civil-rights violation. (See below.)

**3.** does not concisely link each element of the claim of improper medical treatment to each individually named defendant. (See below.)

**4.** may reflect a misunderstanding of the difference between suing defendants in their individual or official capacities. (See below.)

**5.** fails to recognize the principles that govern local governmental entities' liability under federal civil-rights law. (See below.)

**6.** does not adequately link *each element* of a retaliation claim, such as actual or threatened retaliatory action that had a tangible effect on the Plaintiff, to one or more specific named defendant(s). (See below.)

**7.** may inappropriately allege civil-rights violations based on the denial of grievances. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

**8.** may inappropriately allege a constitutional right to a grievance process. *See Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished) ("[T]here is no independent constitutional right to state administrative grievance procedures. Nor does the state's voluntary provision of administrative grievance process create a liberty interest in that process."); *Dixon v. Bishop*, No. CV TDC-19-740, 2020 U.S. Dist. LEXIS 41678, at *20 (D. Md. Mar. 11, 2020) ("[P]risons do not create a liberty interest protected by the Due Process Clause when they adopt administrative mechanisms for hearing and deciding inmate complaints[;] any failure to abide by the administrative remedy procedure or to process [grievances] in a certain way does not create a constitutional claim.").

**9.** does not adequately link *each element* of a legal-access claim to one or more specific named defendant(s). (See below.)

**10.** raises issues of classification change/programming in way that does not support a cause of action. (See below.)

**11.** raises an issue of mail interference that lacks enough supportive factual allegations to state a cause of action. (See below.)

**12.** appears to assert claims based on current confinement; the complaint, however, appears not to have been submitted using legal help Plaintiff is constitutionally entitled to by his institution. *See Lewis v. Casey*, 518 U.S. 343, 356 (1996) (requiring prisoners be given "'*adequate* law libraries or *adequate* assistance from persons trained in the law' . . . to ensure that inmates . . . have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement") (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (emphasis added)).

**13.** possibly raises issues, such as an alleged deprivation of right to counsel, that relate to underlying state criminal charges and thus must be raised in the state court where these charges are pending. *See Sweeten v. Sneddon*, 463 F.2d 713, 715 (10th Cir. 1972).

### B.    GUIDANCE FOR PLAINTIFF

Federal Rule of Civil Procedure 8 requires a complaint to contain "(1) a short and plain statement of the grounds for the court's jurisdiction . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." These requirements are intended to ensure "that defendants enjoy fair notice of what the claims against them are and the grounds upon which they rest." *TV Commc'ns Network, Inc. v ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991).

*Pro se* litigants are not excused from meeting these minimal pleading requirements. "This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Moreover, it is improper for the court "to assume the role of advocate for a pro se litigant." *Id.* Thus, the court cannot "supply additional facts, [or] construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

The Plaintiff should consider these points before filing an amended complaint:

**1.** The revised complaint must stand entirely on its own and shall not refer to, or incorporate by reference, any part of the original complaint(s). *See Murray v. Archambo*, 132 F.3d 609, 612 (10th Cir. 1998) (stating that an amended complaint supersedes the original). Also, the Plaintiff may not add anything to the amended complaint after it is filed without moving for leave to amend. *See* Fed. R. Civ. P. 15.

**2.** Each defendant must be named in the complaint's caption, listed in the section of the complaint setting forth names of each defendant, and affirmatively linked to applicable claims within the "cause of action" section of the complaint.

**3.** The complaint must clearly state what each individual defendant—typically, a named government employee—did to violate the Plaintiff's civil rights. *See Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) (stating that personal participation of each named defendant is an essential allegation in a civil-rights action). "To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, 338 F. App'x 757, 759 (10th Cir. 2009) (unpublished) (cleaned up). The Plaintiff should also include, as much as possible, specific dates—or at least estimates—of when alleged constitutional violations occurred.

**4.** Each cause of action, together with the facts and citations that directly support it, should be stated separately. The Plaintiff should be as brief as possible while still using enough words to fully explain the "who," "what," "where," "when," and "why" of each claim. *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("The [*Bell Atlantic Corp. v.*] *Twombly* Court was particularly critical of complaints that 'mentioned no specific, time, place, or person involved in the alleged [claim].' [550 U.S. 544, 565] n.10 (2007). Given such a complaint, 'a defendant seeking to respond to plaintiff's conclusory allegations . . . would have little idea where to begin.' *Id*.").

**5.** The Plaintiff may not name an individual as a § 1983 defendant based solely on supervisory position. *See Mitchell v. Maynard*, 80 F.2d 1433, 1441 (10th Cir. 1996).

**6.** The denial of a grievance alone, unconnected to a "violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

**7.** "No action shall be brought with respect to prison conditions under . . . Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Plaintiff need not include grievance details in the complaint, however. Exhaustion of administrative remedies is an affirmative defense that must be raised by defendants. *See Jones v. Bock*, 549 U.S. 199, 216 (2007).

**8.** *Respondeat superior*. The Supreme Court has held that, in asserting a Section 1983 claim against a government agent in an individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662 676 (2009). Consequently, there is no *respondeat superior* liability under § 1983. *See id.* ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Entities may not be held liable solely on the ground of an employer-employee relationship with a claimed tortfeasor. *See Monell*, 436 U.S. at 689. Supervisors are considered liable for their own unconstitutional or illegal policies only, and not for employees' tortious acts. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998).

**9.** Affirmative link.

[A] plaintiff who brings a constitutional claim under § 1983 can't obtain relief without first satisfying the personal-participation requirement. That is, the

5

> plaintiff must demonstrate the defendant "personally participated in the alleged constitutional violation" at issue. *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018). Indeed, because § 1983 is a "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins*, 519 F.3d at 1250 (explaining that when plaintiff brings § 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*"); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532–33 (10th Cir. 1998)) (holding that district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants—"despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]"—and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

*Estate of Roemer v. Johnson*, 764 F. App'x 784, 790–91 (10th Cir. 2019).

"A plaintiff's failure to satisfy this requirement will trigger swift and certain dismissal." *Id*. at 790 n.5. Indeed, the Tenth Circuit has "gone so far as to suggest that failure to satisfy the personal-participation requirement will not only justify dismissal for failure to state a claim; it will render the plaintiff's claim frivolous." *Id*.

**10. Inadequate medical treatment.**[2] The Eighth Amendment's ban on cruel and unusual punishment requires prison officials to "provide humane conditions of confinement" including "adequate . . . medical care." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)). To state a cognizable claim under the Eighth Amendment for failure to provide proper medical care, "a prisoner must allege acts or omissions *sufficiently harmful* to evidence deliberate indifference to serious medical needs."

---

[2] The Tenth Circuit has held that a pretrial detainee's claims as to conditions of confinement are controlled by the Fourteenth Amendment's Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims." *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)); *see also Hooks v. Atoki*, 983 F.3d 1193, 1203–04 (10th Cir. 2020).

*Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (emphasis in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Any Eighth Amendment claim must be evaluated under objective and subjective prongs: **a.** "Was the deprivation sufficiently serious?" And, if so, **b.** "Did the officials act with a sufficiently culpable state of mind?" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Under the objective prong, a medical need is "sufficiently serious . . . if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (citations & quotation marks omitted).

The subjective prong requires the plaintiff to show that prison officials were consciously aware that the prisoner faced a substantial risk of harm and wantonly disregarded the risk "by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "[T]he 'inadvertent failure to provide adequate medical care' tantamount to negligence does not satisfy the deliberate indifference standard." *Sparks v. Singh*, 690 F. App'x 598, 604 (10th Cir. 2017) (unpublished) (quoting *Estelle*, 429 U.S. at 105–06).  Furthermore, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kansas Dep't of Corrs.,* 165 F.3d 803, 811 (10th Cir. 1999); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010).

**11. Official capacity versus individual capacity**. The United States Court of Appeals for the Tenth Circuit has explained:

> The Supreme Court has instructed that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (cleaned up). By contrast,

individual-capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

*Coates v. Reigenborn*, Nos. 22-1339 & 22-1434, 2023 U.S. App. LEXIS 27456, at *9–10 (10th Cir. Oct. 16, 2023) (unpublished); *see also Mocek v. City of Albuquerque*, 813 F.3d 912, 932 (10th Cir. 2015) ("A suit against a government agent in his official capacity is treated as a suit against the government.").

One difference between suing a defendant in an official versus individual capacity relates to alleging causation. In a suit against a defendant in an individual capacity, the plaintiff must allege facts showing that the defendant either directly deprived the plaintiff of his constitutional rights or "set in motion a series of events that he knew or reasonably should have known would cause others to deprive [the plaintiff] of h[is] constitutional rights." *Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018) (cleaned up); *see also Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015) ("When confronting individual-capacity § 1983 claims, our focus must always be on the *defendant*—on the injury *he* inflicted or caused to be inflicted, and on *his* motives." (cleaned up)). Conversely, to adequately assert causation against a defendant in an official capacity, the plaintiff must first identify an official policy or custom and then establish that the challenged policy or custom was the "'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404.

Finally, the Plaintiff should keep in mind that "it makes no sense to sue a governmental entity in its individual capacity." *Jackson-Mackay v. McDonald*, No. 22-8033, 2023 U.S. App. LEXIS 6356, at *2 (10th Cir. Mar. 17, 2023).

**12. Local governmental entities**. The following tenets apply to local governmental liability in a federal civil-rights action:

A plaintiff may bring a 42 U.S.C. § 1983 suit for alleged constitutional violations that arise from the policies or practices of a municipal police department. Typically, if a plaintiff alleges wrongdoing on the part of a municipal police department, the plaintiff must name as a defendant the county, city, or other form of local government that oversees the police department, rather than the police department itself. *See, e.g.*, *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) (dismissing the "City of Denver Police Department" as a defendant because it "is not a separate suable entity" from the City of Denver). This is because municipal departments, such as police departments, are generally not considered separate legal entities from the local government they serve. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) ("In order for a plaintiff to sue a city department, it must 'enjoy a separate legal existence.'" (quoting *Mayes v. Elrod*, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979))). That is, "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.*

"Local governing bodies" overseeing a municipal department "can be sued directly under § 1983" for declaratory and injunctive relief, as well as damages, where "the action that is alleged to be unconstitutional implements or executes" a policy or custom attributable to the municipality. *Monell*, 436 U.S. at 690–91. A policy can include "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 690. However, a formal policy need not originate from the local government itself; it can be issued by a municipal department or its officials. *Id*. at 694 (holding that a local government is liable "when execution of a government's policy or custom, whether made by its lawmakers or *by those whose edicts or acts may fairly be said to represent official policy*, inflicts the injury that the government as an entity is responsible under" (emphasis added)).

*Monell* demonstrates how this works in practice. *Id*. at 660–61. There, the plaintiffs challenged formal policies of the Department of Social Services and the Board of Education of the city of New York, which at the time required all pregnant employees to take an unpaid leave of absence without regard to medical necessity. *Id.* Those policies were issued by the city's departments, not literally by the city itself, yet the city was still liable for them. *Id.*

*Brown v. City of Tulsa*, 124 F.4th 1251, 1264–65 (10th Cir. 2025)

**13. Retaliation claim.** To properly assert a retaliation claim, Plaintiff must allege three elements: **a.** he was involved in "constitutionally protected activity"; **b.** Defendants' behavior injured him in a way that "would chill a person of ordinary firmness from continuing to engage

9

in that activity"; and **c.** Defendants' injurious behavior was "substantially motivated" as a reaction to his constitutionally protected conduct. *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). Although the First Amendment right to petition the government includes a prisoner's right to file administrative grievances and sue his custodians, *see Williams v. Allred*, 611 F. App'x 491, 495 (10th Cir. 2015) (unpublished), claims relating to retaliation can proceed only if the Plaintiff demonstrates either that a threat of retaliatory action chilled him from exercising this right, *see Poole v. County of Otero*, 271 F.3d 955, 960 (10th Cir. 2001), or that he was actually punished in direct response to his doing so, *see Worrell v. Henry*, 219 F.3d 1197, 1212–13 (10th Cir. 2000). The Plaintiff should consider whether he has alleged direct action or threats of action that qualifies as retaliation under these standards.

14. **Legal-access claim.** It is true that prison inmates "have a constitutional right to 'adequate, effective, and meaningful' access to the courts and that the states have 'affirmative obligations' to assure all inmates such access." *Ramos v. Lamm*, 639 F.2d 559, 583 (10th Cir. 1980). In *Bounds v. Smith*, the Supreme Court expounded on the obligation to provide legal access by stating, "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977) (footnote omitted & emphasis added).

To assert a constitutional claim for denial of access to courts successfully, however, a plaintiff must allege not only inadequacy of the library or legal assistance provided but also "that the denial of legal resources hindered [the plaintiff's] efforts to pursue a nonfrivolous claim." *Penrod v. Zavaras*, 84 F.3d 1399, 1403 (10th Cir. 1996) (emphasis added); *Carper v. Deland*, 54

10

F.3d 613, 616 (10th Cir. 1995). In other words, a plaintiff must show that "denial or delay of access to the court prejudiced him in pursuing litigation." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). Moreover, the non-frivolous litigation involved must be "habeas corpus or civil rights actions regarding current confinement." *Carper*, 54 F.3d at 616; *accord Lewis v. Casey*, 518 U.S. 343, 353-55 (1996). If, by contrast, the alleged denial of access to the courts or counsel relates to underlying criminal charges pending before a state court, then this federal court lacks jurisdiction to hear the claim, and the Plaintiff must instead raise it before the state court where those charges are pending. *See Sweeten*, 463 F.2d at 715.

**15. Classification.** An inmate's transfer to different housing or adjustment of privileges (e.g., prison employment) does not necessarily mean that prison administrators were deliberately indifferent to conditions with substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Allen v. Raemisch*, 603 F. App'x 682, 684 (10th Cir. 2015) (unpublished) ("[P]risoners do not have a protected liberty or property interest in keeping a specific prison job . . . ."). Nor is it, per se, "'atypical [of] . . . the ordinary incidents of prison life.'" *Adams v. Negron*, 94 F. App'x 676, 678 (10th Cir. 2004) (unpublished) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that placement in highly structured, restrictive prison housing is not deliberate indifference)).

**16. Mail interference.** It is true that "[c]orrespondence between a prisoner and an outsider implicates the guarantee of freedom of speech under the First Amendment and a qualified liberty interest under the Fourteenth Amendment." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). But the Plaintiff has not asserted facts that would allow an analysis under the seminal case governing mail issues vis-à-vis the First Amendment. *See Turner v. Safley*, 482

11

U.S. 78, 89 (1987); *Parkhurst v. Lampert*, 339 F. App'x 855, 860 (10th Cir. 2009) (unpublished) ("The record in this case is not sufficiently developed for a proper *Turner* analysis, which requires a reasonableness inquiry . . . ."). "Because *Turner* allows prohibitions and restrictions that are reasonably related to legitimate penological interests," a plaintiff "must include sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests." *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010) (emphasis in original)). Indeed, the Plaintiff does not appear to allege that the losses of letters he sent or received were more than isolated, one-off incidents or that Defendants intentionally or systematically mishandled his mail. *Cf. Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (holding that an isolated incident of opening protected legal mail, without evidence of improper motive or resulting interference with right to counsel, does not give rise to a constitutional violation).

### C.    MOTION FOR APPOINTED COUNSEL

Plaintiff moves for the "appointment of counsel." Dkt. No. 10.

"As a civil litigant, plaintiff has no Sixth Amendment right to counsel." *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006). Although the court lacks authority to appoint counsel, a federal statute authorizes it to ask counsel to agree to represent an indigent plaintiff free of charge.[3] *See* 28 U.S.C. § 1915(e)(1) ("The Court may request an attorney to represent any

---

[3] The Tenth Circuit has noted:

> Each year, the district court receives hundreds of requests for legal representation and only a small number of attorneys are available to accept these requests. Accordingly, the district court must use discretion in deciding which cases warrant a request for counsel. To do otherwise would deprive clearly deserving litigants of an

person unable to afford counsel."); *McCleland v. Raemisch*, No. 20-1390, 2021 U.S. App. LEXIS 29490, at *15 n.3 (10th Cir. Sept. 30, 2021) (unpublished) (explaining that when prisoner-plaintiffs "refer to appointing counsel," they "really refer to a request that an attorney take the case *pro bono*"). The Plaintiff has not met his burden here of convincing the court that his claims have enough merit to warrant such a request of counsel. *See McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985). Additionally, "[i]t is not enough" for the Plaintiff to argue that he needs help "in presenting his strongest possible case, as the same could be said in any case." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (cleaned up).

In deciding whether to ask volunteer counsel to represent a plaintiff at no cost, this court considers a variety of factors, including "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (cleaned up); *accord McCarthy*, 753 F.2d at 838–39. Considering these factors, the court

---

opportunity to obtain legal representation. The dilemma is unfortunate for litigants [denied counsel]. But the dilemma [i]s not the district court's fault; that dilemma [i]s the product of the court's lack of authority to compel legal representation or to reimburse attorneys for their time.

*Rachel v. Troutt*, 820 F.3d 390, 397 n.7 (10th Cir. 2016); *see also Mallard v. United States Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (stating that courts may not "require an unwilling attorney to represent an indigent litigant in a civil case"); *Greene v. United States Postal Serv.*, 795 F. App'x 581, 583 (10th Cir. 2019) (unpublished) ("In most legal communities, only a limited number of attorneys are willing to take these cases. Thus, the district court [must] decide how to maximize the benefit from these local resources."); *Gross v. GM LLC*, 441 F. App'x 562, 567 (10th Cir. 2011) (unpublished) (observing that courts rarely request counsel to represent parties in civil actions); *Castner v. Colorado Springs Cablevision*, 979 F.2d 1417, 1421 (10th Cir. 1992) (cautioning courts that indiscriminately appointing "volunteer counsel to undeserving claims will waste a precious resource and may discourage attorneys from donating their time").

concludes here that, at this time, the Plaintiff's claims may not be colorable, the issues in this case are not complex, and the Plaintiff does not appear to be too incapacitated or unable to adequately function in pursuing this matter. Further, there is no valid complaint on the docket as of this Order. For these reasons, the court denies for now the Plaintiff's motion for the Court to request counsel to represent Plaintiff *pro bono*.

### D.    MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

The court next evaluates Docket Number 12, the Plaintiff's "Motion for Temporary Restraining Order & Preliminary Injunction."

"Preliminary injunctive relief—whether a temporary restraining order or a preliminary injunction—'is an extraordinary remedy never awarded as of right.'" *Schiermeyer ex rel. Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1269 (D. Utah 2023) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Such relief is "the exception rather than the rule" and will be granted only if "the movant's right to relief [is] clear and unequivocal." *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020) (cleaned up). A party seeking such relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Johnson v. Bowles*, 2022 WL 4109687, at *2 (D. Utah Sept. 8, 2022). "[E]ach of these elements is a prerequisite for obtaining" preliminary injunctive relief. *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016). It follows that a "plaintiff's failure to prove any one of the four preliminary injunction factors renders [his] request for injunctive relief

14

unwarranted." *Village of Logan v. United States Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014) (unpublished).

The court has carefully reviewed the Plaintiff's motion for injunctive relief and concludes that he has not met his burden. The Plaintiff has not adequately addressed any of the four elements necessary to an analysis of his motion. In particular, given the court's conclusion that the Plaintiff's complaint does not state any claims upon which relief may be granted, it follows that he cannot have demonstrated a likelihood of success on the merits with respect to any claim that could form the basis for injunctive relief. *See Rowlett v. Friel*, 2005 WL 2266595, at *6 (D. Utah Sept. 16, 2005). Such relief is therefore denied, but the Plaintiff may bring a renewed motion for injunctive relief if he elects to submit an amended complaint and continues to pursue his claims.

### E.      ORDER

**IT IS ACCORDINGLY ORDERED as follows:**

**1.** If the Plaintiff wishes to continue to pursue this action, he shall, within ninety days, cure the Complaint's deficiencies noted above by filing a document entitled, "Amended Complaint," that does not refer to or include any other document.

**2.** The Clerk's Office shall mail the Plaintiff the Pro Se Litigant Guide with a blank-form civil-rights complaint which the Plaintiff must use to pursue an amended complaint.

**3.** If the Plaintiff fails to timely cure the above deficiencies according to this Order's instructions, this action will be dismissed without further notice.

**4.** The Plaintiff must tell the court of any address change and timely comply with court orders. *See* D. Utah Civ. R. 83-1.6(b) ("An unrepresented party must immediately notify the

Clerk's Office in writing of any name, mailing address, or email address changes."). Failure to do so may result in this action's dismissal for failure to prosecute. *See* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits.").

5. Extensions of time are disfavored, though reasonable extensions may be granted. Any motion for time extension must be filed no later than **fourteen days** before the deadline to be extended.

6. No direct communication is to take place with any judge. All relevant information, letters, documents, and papers, labeled with case number, are to be directed to the court clerk.

7. The Plaintiff must observe this District of Utah local rule: "A party proceeding without an attorney (unrepresented party or *pro se* party) is obligated to comply with: (1) the Federal Rules of Civil Procedure; (2) these Local Rules of Practice; (3) the Utah Standards of Professionalism and Civility; and (4) other laws and rules relevant to the action." DUCivR 83-1.6(a).

8. Docket Number 10, the Plaintiff's motion for "appointed" counsel, is **DENIED**. But if—after the case develops further—it appears that counsel may be needed or of specific help, the court may ask an attorney to appear *pro bono* on the Plaintiff's behalf. The court will continually reevaluate the need for counsel; no further motions for the court to request *pro bono* representation are needed.

16

**9.** Docket Number 11, the Plaintiff's motion for service of process, is **DENIED**. There is no valid complaint on file as of this Order. Also, no further motion for service of process is needed here because the court will order service if the Plaintiff submits an amended complaint that states a claim for relief. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [*in forma pauperis*] cases.").

**10.** Docket Number 12, the Plaintiff's request for preliminary injunctive relief is **DENIED**.

DATED this 15th day of May, 2026.

BY THE COURT:

HOWARD C. NIELSON, JR.
United States District Judge